UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RONALD J. VENTICINQUE,

                Petitioner,

-against-

JOHN BURGE, Warden,

                Respondent.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
No. CV-04-3411 (FB)(CLP)

*Appearances:*
*For the Petitioner:*
RONALD VENTICINQUE, *pro se*
#00-A-3176
Auburn Correctional Facility
135 State Street
Auburn, NY 13021

*For the Respondent:*
KIMBERLY MORGAN, ESQ.
New York State Attorney Generals Office
120 Broadway
New York, NY 10271

**BLOCK, District Judge:**

      *Pro se* petitioner, Ronald Venticinque ("Venticinque"), seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his conviction in New York Supreme Court, Queens County, on one count of assault and two counts of robbery. Venticinque claims that his Sixth Amendment right was violated in two respects: he was denied his right to represent himself at trial and his trial counsel was ineffective; he also claims that he was deprived of his rights under the Due Process Clause because the government failed to conduct DNA or other forensic tests on the knife that was used in the assault of which he was convicted, and the prosecutor introduced an excerpt from the transcript of his grand jury testimony that was inaccurately transcribed. For the reasons set forth below, his

1

petition is denied.

## I.

It is well settled that "federal habeas relief is not available unless 'the applicant has exhausted the remedies available in the courts of the State.'" *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(b)(1)(A)). Venticinque's self-representation, ineffective-assistance and grand-jury transcript claims were presented to and rejected by the Appellate Division, Second Department, *see People v. Venticinque*, 301 A.D.2d 619 (2d Dep't 2003), and were fully exhausted when the New York Court of Appeals denied leave to appeal. *See People v. Venticinque*, 100 N.Y.2d 566 (2003) (table). Venticinque has not exhausted his claim of the government's failure to use forensics; nonetheless, if warranted, the Court may deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of *habeas corpus* may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) ("A district court also may . . . deny a petition on the merits even if it contains an unexhausted claim.").

## II.

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a federal claim has been "adjudicated on the merits" by a state court, the state court's judgment is entitled to substantial deference. *See* 28 U.S.C. § 2254(d). "[A] state court adjudicates a state prisoner's federal claim on the merits when

it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citations and quotations omitted).

For claims "adjudicated on the merits," *habeas* relief may not be granted unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the particular facts of a case. *See id.* at 409. This inquiry requires a court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* In that respect, the standard to be applied "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)). However, the "increment [of incorrectness beyond error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Eze v. Senkowski*, 321 F.3d 110, 125 (2d

3

Cir. 2003) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## III.

## A. Right to Self-Representation

### 1. *Facts Relevant to This Claim*

On the morning of the second day of trial, Venticinque requested permission to represent himself for the remainder of his trial. The following colloquy ensued between the Venticinque ("Def") and the trial court ("Court"):

> COURT: We're more than halfway, we're near the end.
>
> DEF: Possibly three quarters
>
> COURT: Right.
>
> DEF: From this point on I would like to go *pro se* on my defense.
>
> COURT: That's not permitted at this point. Your exception's noted for the record. I don't believe that you have the background to represent yourself, you don't have formal legal training, [your attorney] is doing a good job as he possibly can of representing you. It would not in any way, shape or form be in your legal interest at this point to suddenly in the middle of trial, really toward the end of it, start representing yourself. Sir, [your attorney] has responded as best he can to all your needs and requests.
>
> In terms of the record, turning this down, I note a prior 730 dismissal for Mr. Venticinque as well as a period of time that this case stayed idle while other 730 issues went forward and it is the clear and unequivocal position of this court that Mr. Venticinque does not have legal training, the

4

| | |
|---|---|
| | formal background, the knowledge of the law, the ability to question witnesses and to really represent his own best interest such as to represent himself at this point in the proceedings pro se in the context which this application has now been made.[1] |
| DEF: | Excuse me, your Honor, but I do work for two law firms. |
| COURT: | Would you like to state your background for that? |
| DEF: | I did things like clerical things, I have certain knowledge. |
| COURT: | But you don't have any formal training in questioning witnesses, introducing evidence, making final summation arguments to a jury or anything of that nature. |
| | Mr. Venticinque, I have tried very hard to give you as fair a trial as I possibly can and [your attorney] is a very good lawyer who's been doing a very good job representing you and I don't know what benefits you can possibly hope to achieve by suddenly at this point in the proceedings representing yourself. I think you would be hurting your own self-interest. |

\* \* \*

| | |
|---|---|
| DEF: | I am still not finished with this issue. I do have legal matters. I understand [my attorney] is a good attorney and I think he is a good attorney and I stated in my argument that I have here to prove ineffective counsel, I didn't want to break - |

---

[1] Article 730 of New York's Criminal Procedure Law governs when a defendant is competent to stand trial. *See* N.Y. Crim. Proc. Law § 730.

5

| COURT: | You want to argue ineffective counsel? |
|---|---|
| DEF: | [My attorney] is a good lawyer, I feel something is lacking or something somewhere. He don't want to call some witnesses, I got about forty-five reasons why. |

Tr. at 500-02.[2] Venticinque's attorney then noted that he had explained to Venticinque that the testimony that those witnesses would offer would only be relevant to collateral matters. Thereafter, the Court afforded Venticinque and his attorney an opportunity to confer about the "forty-five reasons" for his request to proceed *pro se*. Following that conference, the trial court commented that the difficulties between Venticinque and his attorney simply amounted "to a disagreement with regard to trial strategy as well as being unhappy being bound by certain rules governing the introduction of collateral matters into evidence." Tr. at 512.

When the issue was raised on direct appeal, the Appellate Division ruled that the trial court correctly "exercised its discretion in denying [Venticinque's] request" because it "was untimely and made at an advanced stage of the trial," and he "failed to set forth a compelling reason for the request." *Venticinque*, 301 A.D.2d at 619-20 (citations omitted).

## 2. *Law Relevant to This Claim and Application*

*Faretta v. California*, 422 U.S. 806 (1975), clearly established that a criminal defendant has a Sixth Amendment right to represent himself at trial if he knowingly and

---

[2] "Tr." refers to the transcript of the trial.

voluntarily waives his right to counsel. "If the defendant asks to proceed *pro se* before the trial commences this right is absolute, and his request must be granted" provided that the request is knowing and voluntary. *United States v. Walker*, 142 F.3d 103, 108 (2d Cir. 1998) (citation and quotations omitted). Furthermore, the Supreme Court has clarified that although "a defendant choosing self-representation must do so competently and intelligently, . . . the defendant's technical legal knowledge is not relevant to the determination whether he is competent to waive his right to counsel"; that is, "a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." *Godinez v. Moran*, 509 U.S. 389, 400 (1993) (citation and quotations omitted).

After trial has commenced, however, "the defendant's right to self-representation is sharply curtailed." Nonetheless, the Court may not rely on a defendant's lack of legal knowledge in denying his request to proceed *pro se*. *See Hirschfield v. Payne*, 420 F.3d 922 (9th Cir. 2005) (granting *habeas* where a state court relied on defendant's lack of legal knowledge in denying his request to proceed *pro se* even when the request was made following the commencement of trial); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003) (same). Rather, the Court "must balance the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress." *Walker*, 142 F.3d at 108 (citation and quotations omitted). Relevant factors to consider in applying this balancing test include "the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's

7

prior proclivity to substitute counsel." *Williams v. Bartlett*, 44 F.3d 95, 99-100 n. 1 (2d Cir. 1994).

Although the state trial court undeniably appeared to primarily rely on Venticinque's lack of legal expertise, the Appellate Division did not. Accordingly, because the Appellate Division "is free to affirm the trial court on any basis supported by the record[,]" the Court must determine whether its decision – not the state trial court's opinion – was contrary to or an unreasonable application of clearly established Supreme Court precedent. *Marshall v. Taylor*, 395 F.3d 1058, 1061 & 1061 n.18 (9th Cir. 2005) (citing *Hamilton v. Goose*, 23 F.3d 859, 862 n.3 (8th Cir. 1994)).

Based on the Court's review of the trial record, the Court concludes that the Appellate Division's analysis was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. As the Appellate Division found, Venticinque's request was not timely and there was no compelling reason to permit him to proceed *pro se*. *See also United States v. Matsushita*, 794 F.2d 46, 51-52 (2d Cir. 1986) (upholding district court's denial where court found that request was made to disrupt proceedings); *United States v. Brown*, 744 F.2d 905, 908 (2d Cir. 1984) (upholding denial where court found that counsel was adequate and that self-representation would have been disruptive of the trial process); *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976) (denying *habeas* based on denial of self-representation near the end of trial because "public defender was competent[,]" the petitioner "was obstinate, and the ill-timed request followed a torrent of abortive counsel substitutions.").

## B. Grand Jury Transcripts

Venticinque next contends that he was deprived of due process when the trial court permitted the prosecutor to introduce statements taken from the transcript of Venticinque's grand-jury testimony, which he alleges contained errors. For example, after Venticinque testified at trial that he placed the soda can, which he was accused of attempting to steal, in his *outside* jacket pocket, the prosecutor introduced his grand jury testimony, in which he stated that he put the soda can in his *inside* jacket pocket; in response, Venticinque denied making that statement to the grand jury. The Appellate Division summarily denied his claim as "without merit." *Venticinque*, 301 A.D.2d at 619.

For a *habeas* petitioner to prevail on a claim that an evidentiary ruling amounted to a deprivation of due process, he must show that 1) the ruling was in error, and 2) the error was so pervasive as to have denied him a fundamentally fair trial. *See United States v. Agurs*, 427 U.S. 97, 108 (1976). Even assuming *arguendo* that the transcript contained errors, at most, these errors exposed minor inconsistencies in Venticinque's testimony and thus do not rise to the level of a due process violation.

Moreover, because any error was non-structural in nature, it is subject to harmless-error review. *See, e.g., Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (evidentiary rulings are subject to harmless-error review). Based on the Court's review of the record, in light of the other evidence of Venticinque's guilt, any error was harmless under either the standard enunciated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (error harmless if it did not have a "substantial and injurious effect or influence in determining

9

the jury's verdict" or *Chapman v. California*, 386 U.S. 18 (1967) (error harmless if beyond a reasonable doubt it did not contribute to the verdict). *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (noting that the Second Circuit has not resolved the proper standard of review to apply "when determining whether a non-structural trial error challenged on collateral review is harmless when the state courts do not themselves reach the harmlessness question").[3] Accordingly, the Court concludes that the Appellate Division's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## C. Ineffective Assistance

Venticinque also claims that his trial counsel was ineffective; he raises an array of alleged errors including his counsel's (1) failing to call several witnesses and introduce certain evidence; (2) subjecting Venticinque to numerous mental health examinations; and (3) failing to object to the errors in the transcript of his grand jury testimony. The Appellate Division also summarily denied this claim as "without merit." *Venticinque*, 301 A.D.2d at 619.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that counsel's representation "fell below an objective standard of reasonableness" based

---

[3] The Second Circuit has also noted that there is a third possible standard of review: "apply AEDPA's deferential standard of review and inquire whether the state court's affirmance of the conviction is contrary to or an unreasonable application of the harmlessness standard elaborated in *Chapman v. California* . . . ." *Benn*, 402 F.3d at 105. Clearly, if an error is not harmless under the *Chapman* standard without AEDPA review, it would not be harmless applying AEDPA deference to the *Chapman* standard of review.

10

on "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Based on the Court's review of the trial record, the Court concludes that the state court's analysis was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

In regard to the first alleged error, the proffered testimony of the suggested defense witnesses and the evidence related only to collateral matters or were contrary to his counsel's trial strategy; the failure to introduce such evidence clearly does not amount to ineffective assistance. *See, e.g., United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999) ("[A]ctions or omissions that might be considered sound trial strategy do not constitute ineffective assistance."); *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (counsel not ineffective when alleged errors related only to collateral matters). In regard to the second alleged error, contrary to Venticinque's contentions, his counsel properly subjected him to mental health examinations to determine whether he was competent to stand trial. Finally, his counsel's failure to object to the admission of a transcript of his grand jury testimony does not render him ineffective. Even assuming *arguendo* that his counsel's action was objectively unreasonable, in light of the ample evidence against him, Venticinque cannot establish the second prong of *Strickland*.

### D. Failure to Investigate

Finally, Venticinque contends that he was deprived of his due process rights because the prosecutor failed to conduct DNA or other forensic analyses on the knife that

11

was used in the underlying assault; he claims that these tests would have rebutted the victim's testimony that the knife was left in his stomach. As an initial matter, the prosecutor's failure to conduct forensic tests does not violate a federal right. *See Arizona v. Youngblood*, 488 U.S. 51, 58-59 (1988) ("strongly disagree[ing]" with a lower court that held that the "Due Process Clause is violated when the police fail to use a particular investigatory tool" and noting that "the police do not have a constitutional duty to perform any particular tests.").

Furthermore, in *Herrera v. Collins*, the Supreme Court explained that assuming *arguendo* that a "freestanding" claim of actual innocence based on newly discovered evidence – such as DNA testing – could serve as a ground for *habeas* relief, at a minimum, "the threshold showing for such an assumed right would necessarily be extraordinarily high." 506 U.S. 390, 404-05, 417 (1993). Therefore, *habeas* relief based on DNA testing clearly is not available where the result of the testing, as here, would not be sufficient to establish a petitioner's innocence. *See Lyon v. Senkowski*, 109 F. Supp. 2d 125, 142 (W.D.N.Y. 2000) (denying *habeas* claim based on DNA testing because testing could not establish petitioner's innocence (citing *Herrera*, 406 U.S. at 399, 417)). Thus, Venticinque's claim is denied.

## CONCLUSION

The petition is denied. A certificate of appealability will not issue because Venticinque has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated:  Brooklyn, New York
        December 12, 2005